UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RATHBORNE LAND COMPANY, LLC &          *          CIVIL ACTION
SIMONEAUX FAMILY LAND, LLC

VERSUS                                 *          NO. 05-2452

ASCENT ENERGY, INC.                    *          SECTION B(3)

ORDER AND REASONS

Before the Court are Defendant's motion to dismiss and alternatively for summary judgment (Rec. Doc. No. 10) and Plaintiff's, Simoneaux Family Land, LLC, motion for partial summary judgement (Rec. Doc. No. 21). For the following reasons, **IT IS ORDERED** that Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.[1]

Background

Plaintiffs, Rathborne Land Company, LLC ("Rathborne") and Simoneaux Family Land, LLC ("Simoneaux"), filed a Petition seeking declaratory judgment of mineral lease cancellation for failure of the lessee to develop leased property as a reasonably prudent operator under Louisiana Revised Statute 31:122. (Rec. Doc. No. 1). The petition pertains to the cancellation of three mineral leases, one of which Rathborne holds rights to as lessor ("Rathborne lease") and two of which Simoneaux holds rights to as lessor ("Simoneaux leases"). Ascent Energy Louisiana, LLC

---

[1] Oral argument scheduled for May 10, 2006 at 9:00 a.m. is hereby **CANCELLED** in view of the sufficiency of parties' briefing and this Order and Reasons.

1

("Ascent") holds rights as the lessee under all three of these leases.

In January 8, 1952, two leases were created and recorded for the same tract of land in favor of The Texas Company as lessee by two different lessors. (Rec. Doc. No. 33 at 3). Parties' predecessors in interest amended both Simoneaux leases on December 30, 1963 pursuant to a Compromise Agreement and Partial Release of all Gas and Mineral Leases ("Compromise Agreement").[2] Ascent Energy, Inc. acquired its interest in the Simoneaux leases, as the mineral lessee, by an act of assignment dated July 26, 2001. On July 26, 2001, Ascent Energy, Inc. acquired the leases by act of assignment. (Rec. Doc. No. 1 at "Ex. A ¶5"). Ascent Energy, LLC is the current lessee under all pertinent lease agreements pursuant to an act of assignment from Ascent Energy, Inc. dated July 24, 2004.[3] (Rec. Doc. No. 33 at 4). The Petition claims Ascent and its predecessors in interest failed and refused to conduct new exploratory or development operations on the leased properties and refused to participate in proposed

---

[2] The Rathborne lease was not affected by the stipulation that is the subject of the motions before the Court.

[3] From the pleadings, it appears that Ascent Energy, LLC answered Plaintiffs' Original Petition, along with Ascent Energy, Inc., even though Ascent Energy, LLC is not a named defendant. Plaintiffs state Ascent Energy, LLC is not a legal entity and not registered with the Louisiana Secretary of State. However, Plaintiffs amended their complaint to join Ascent Energy, LLC as a party. The Court acknowledges the confusion regarding Ascent Energy, Inc. and Ascent Energy, LLC as separate legal entities. The Court will refer to both entities as "Ascent" or "Defendant lessee" to avoid confusion.

seismic operations affecting leased properties. (Petition ¶ 10). On November 18, 2002, Rathborne and Simoneaux made formal demand upon Ascent for release of undeveloped and non-producing property. (Petition ¶ 11). Failure to release such property resulted in the instant action for declaratory judgment.

Defendant lessee filed a motion for summary judgment contending that as a matter of law Plaintiff Simoneaux is not entitled to cancellation of the leases because of Paragraph 2 of Compromise Agreement abdicates Defendant of any further duty. Paragraph 2 provides:

> Lessors hereby acknowledge that Texaco and Pan American have, with respect to the Retained Acreage, complied with their respective obligations under the leases, and that oil and gas is now being produced from the Retained Acreage <u>in paying quantities</u>; that the <u>Retained Acreage has been, is now and shall hereafter be permanently considered as fully explored and developed</u> as to all sands, strata and horizons; that the wells drilled on the Retained Acreage and on lands unitized therewith constitute reasonable, adequate, and sufficient exploration and development of the Retained Acreage <u>in full compliance with the leases</u>, and that neither Texaco nor Pan American, <u>nor their respective successors or assigns, shall be under any obligation to explore or develop the Retained Acreage further</u>, as to any and all sands, strata whether or not known to exist, so long as production of oil or gas or other minerals attribuable to the Retained Acreage should continue to be in paying quantities; provided, that Texaco and Pan American shall have the privilege, at their election, consistent with the provisions of the leases, to conduct further operations on the Retained Acreage, and as to which provisions of the leases shall govern in all respects.

(Rec. Doc. No. 33 at 5) (emphasis added). Defendant lessee contend that this provision amounts to a stipulation by the parties of what shall constitute reasonably prudent conduct on

the part of the lessee. Essentially, they argue they have no legal obligation to develop the property of the two mineral leases. Plaintiffs, on the other hand, urge the Court to find the provision void under public policy.

## LAW AND ANALYSIS

Under the Mineral Code, the landowner-lessor and lessee "must exercise their respective rights with reasonable regard for those of the other." La. R.S. § 30:11. Article 122 of the Mineral Code defines the lessee's obligations:

> A mineral lessee is not under a fiduciary obligation to its lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee. (emphasis added).

This article codifies Louisiana Civil Code and jurisprudential principles that require every lessee to enjoy the leased property as a "good administrator" and requires a mineral lessee to act as a "reasonably prudent operator." See La. Civ. Code art. 2710; La. R.S. § 31:122. The Louisiana Supreme Court, in Carter v. Arkansas Louisiana Gas Co., 213 La. 1028 (1948), set out the standard for determining whether a lessee has fulfilled its duty to develop. However, neither party in this action contests whether Ascent has fulfilled its duty to develop the leased property through affirmative actions. Instead, Ascent contends Paragraph 2 fulfills that obligation and no duty exists to further develop the property. Plaintiffs, conversely, contend

such a proposition is contrary to public policy and the principles of Louisiana mineral law. The Court agrees.

Article 122 of the Mineral Code, after establishing the requirement of good faith development of the property as a prudent operator for the mutual benefit of the lessee and lessor, provides that the parties "may stipulate what shall constitute reasonably prudent conduct on the part of the lessee." Although the obligation of good faith prudent development cannot be abrogated, it may be contractually defined by the parties. Defendant argues Paragraph 2 is a stipulation defining Defendant's obligations of prudent development. The Court finds, however, that a so-called stipulation that completely abrogates a lessee from any duty to explore the leased property cannot be upheld.

Further, Article 122 further codifies the cardinal principle recognized in Louisiana mineral law that "the main consideration of a mineral lease is the development of the leased premises for minerals, and that the lessee must develop with reasonable diligence or give up the contract." Dawes v. Hale, No. 15048 (La. App. 2 Cir. 8/25/82); 421 So.2d 1208, 1211 (citing Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 1032 (1948)).

However, Paragraph 2 cannot be reasonably interpreted to stipulate what shall constitute "reasonable development" of the leased property by the lessee. The 1963 release could not contemplate the technological advances of 2006 and what would constitute fully explored and developed property. See Dawes, 421

5

So.2d at 1211. Even if it did, courts would be ill-advised to allow this release, decades later, to adversely affect "reasonable development."

Public policy dictates the necessity of the principle of "reasonable development" to give effect to the parties' intent tin confecting a mineral lease, to assure the reasonable development of Louisiana's natural resources, and to prevent the removal of property from commerce. Taussig v. Goldking Properties Co., 495 So. 2d 1008, 1014-15 (La.App. 3 Cir. 1986), cert denied, 502 So. 2d 111 (La. 1987) (citing Dawes, 421 So.2d at 1211). Therefore, under Article 122, there is an implied covenant of every mineral lease that lessee has a duty to develop the leased premises. Edmundson Bros. Partnership v. Montex Drilling Co., No. 98-1564 (La. App. 3 Cir. 05/05/99); 731 So. 2d 1049, 1052-53; Morrison v. D & L Partnership, No. 85-843 (La. App. 3 Cir. 8/8/86); 499 So. 2d 988, 991.

The Mineral Code permits partial dissolution of the leased premises. La. R.S. § 31:142. This falls within the Court's sound discretion. See Morrison v. D & L Partnership, No. 85-843 (La. App. 3 Cir. 10/8/86); 499 So. 2d 988, 993. We do so here for the foregoing reasons.

New Orleans, Louisiana, this 5th day of May, 2006.

UNITED STATES DISTRICT JUDGE