```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

**RATHBORNE LAND COMPANY LLC**           *      **CIVIL ACTION**
**AND SIMONEAUX FAMILY LAND, LLC.**

**VERSUS**                               *      **NO. 05-2452**


**ASCENT ENERGY, INC.**                  *      **SECTION "B"**

### ORDER AND REASONS

Before the Court are the following pending motions: a Motion to Dismiss filed on behalf of Plaintiff, Rathborne Land Company LLC and Simoneaux Family Land, LLC pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rec. Doc. No. 38) and similar Motion to Dismiss First Amended and Supplemental Counterclaim Pursuant to Rule 12(b)(6) (Rec. Doc. No. 69); and Ascent Energy Inc.'s Motion for Reconsideration, Relief from an Order, and/or for Clarification, and Alternatively for Interlocutory Appeal and Final Judgment under Federal Rule of Civil Procedure 54(b), (Rec. Doc. No. 39). For the following reasons, **IT IS ORDERED** that Rathborne's motions to dismiss are **GRANTED** in part and **DENIED** in part, and Defendant's motion is **GRANTED** in part, for purpose of clarification.

### BACKGROUND

Plaintiffs, Rathborne Land Company, LLC ("Rathborne") and Simoneaux Family Land, LLC ("Simoneaux"), filed a Petition seeking declaratory judgment of mineral lease cancellation for

failure of the lessee to develop leased property as a reasonably prudent operator under Louisiana Revised Statute 31:122. (Rec. Doc. No. 1). The petition pertains to the cancellation of three mineral leases, one of which Rathborne holds rights to as lessor ("Rathborne lease") and two of which Simoneaux holds rights to as lessor ("Simoneaux leases"). Ascent Energy Louisiana, LLC ("Ascent") holds rights as the lessee under all three of these leases.

In January 8, 1952, two leases were created and recorded for the same tract of land in favor of The Texas Company as lessee by two different lessors. (Rec. Doc. No. 33 at 3). Parties' predecessors in interest amended both Simoneaux leases on December 30, 1963 pursuant to a Compromise Agreement and Partial Release of all Gas and Mineral Leases ("Compromise Agreement").[1] Ascent Energy, Inc. acquired its interest in the Simoneaux leases, as the mineral lessee, by an act of assignment dated July 26, 2001. On July 26, 2001, Ascent Energy, Inc. acquired the leases by act of assignment. (Rec. Doc. No. 1 at "Ex. A ¶5"). Ascent Energy, LLC is the current lessee under all pertinent lease agreements pursuant to an act of assignment from Ascent Energy, Inc. dated July 24, 2004. (Rec. Doc. No. 33 at 4). The Petition claims Ascent and its predecessors in interest failed and refused to conduct new exploratory or development operations

---

[1] The Rathborne lease was not affected by the Compromise Agreement addressed in the prior motion for partial summary judgment or the motion for reconsideration.

on the leased properties and refused to participate in proposed seismic operations affecting leased properties. (Petition ¶ 10). On November 18, 2002, Rathborne and Simoneaux made formal demand upon Ascent for release of undeveloped and non-producing property. (Petition ¶ 11). Failure to release such property resulted in the instant action for declaratory judgment.

Ascent filed a motion for summary judgment contending that as a matter of law Plaintiff Simoneaux is not entitled to cancellation of the leases because Paragraph 2 the of Compromise Agreement abdicates Defendant of any further duty. Plaintiff filed a cross-motion for partial summary judgment to invalidate Paragraph 2. Paragraph 2 provides:

> Lessors hereby acknowledge that Texaco and Pan American have, with respect to the Retained Acreage, complied with their respective obligations under the leases, and that oil and gas is now being produced from the Retained Acreage in paying quantities; that the Retained Acreage has been, is now and shall hereafter be permanently considered as fully explored and developed as to all sands, strata and horizons; that the wells drilled on the Retained Acreage and on lands unitized therewith constitute reasonable, adequate, and sufficient exploration and development of the Retained Acreage in full compliance with the leases, and that neither Texaco nor Pan American, nor their respective successors or assigns, shall be under any obligation to explore or develop the Retained Acreage further, as to any and all sands, strata whether or not known to exist, so long as production of oil or gas or other minerals attributable to the Retained Acreage should continue to be in paying quantities; provided, that Texaco and Pan American shall have the privilege, at their election, consistent with the provisions of the leases, to conduct further operations on the Retained Acreage, and as to which provisions of the leases shall govern in all respects.

(Rec. Doc. No. 33 at 5) (emphasis added).[2]

On May 8, 2006, the Court considered parties' motions related to said Compromise Agreement and determined Paragraph 2 was invalid pursuant to public policy and dissolved that portion of the lease agreement. (Rec. Doc. No. 37). In the instant motion, Ascent urges the Court to reconsider its decision and grant relief under Rule 60(b), or alternatively grant interlocutory appeal or final judgment under Rule 54(b).

Following the Court's decision, Ascent filed an amended and supplemental counterclaim. The primary claim is that due to the dissolution of the Compromise Agreement, the Simoneaux and Rathborne families have been unjustly enriched. The Counterclaim contains claims against both Simoneaux and Rathborne for unjust enrichment and possessor in good faith; and alternative claims against Simoneaux as a third party purchaser in good faith and prematurity.

**I. Motion for Clarification, Reconsideration, Final Judgment, or Interlocutory Appeal:**

**A. Standard of Review**

---

[2] Ascent's Answer (Rec. Doc. No. 2) includes an affirmative defense related to paragraph 2 "the terms and conditions of the Compromise Agreement and Partial Release of Oil and Gas Mineral Lease attached as Exhibit 'C' of the Petition as an affirmative defense for any claim for cancellation or failure to comply under La.R.S. 31:122 or any other law or statutes. The St. Charles Land Company mineral lease and Simoneaux mineral lease have been explored and developed pursuant to mutually agreed conditions and terms consistent with La. R.S. 31:3." (Rec. Doc. No. 2 at 4).

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration.  <u>Bass v. United States Dep't of Agric.</u>, 211 F.3d 959, 962 (5th Cir. 2000).  The Fifth Circuit has held that a motion for reconsideration, provided it challenges the judgment on the merits, is to be treated as either "a motion to 'alter or amend' under Rule 59(e) or a motion for 'relief from judgment' under Rule 60(b)." <u>Lavespere v. Niagra Machine & Tool Works, Inc.</u>, 910 F.2d 167, 174 (5th Cir. 1990), abrogated on other grounds by <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069 (5th Cir. 1994).  Motions for reconsideration received within 10 days of judgment are treated under Rule 59(e) of the Federal Rules of Civil Procedure; motions for reconsideration received more than 10 days after judgment are treated under Rule 60(b) of the Federal Rules of Civil Procedure. <u>Dial One of the Mid-South, Inc. v. BellSouth Telecom., Inc.</u>, 401 F.3d 603, 606 (5th Cir. 2005); *Bass*, 211 F.3d at 962.  Ascent's motion for reconsideration was filed within 10 business days of judgment and, thus, will be treated under Rule 59(e).

"A court has considerable discretion to grant or deny a motion under Rule 59(e)."  <u>Flynn v. Terrebonne Parish Sch. Bd.</u>, 348 F. Supp. 2d 769, 771 (E.D. La. 2004), <u>citing</u> <u>Edward H. Bohlin Co. v. Banning Co.</u>, 6 F.3d 350, 355 (5th Cir. 1993).  Reconsideration of a prior order is an extraordinary remedy that

5

should only be used sparingly.  Flynn, 348 F. Supp. 2d at 771, citing Fields v. Pool Offshore, No. 97-3170, 1998 U.S. Dist. LEXIS 1122, at *6 (E.D. La. Feb. 3, 1998), aff'd, 182 F.3d 353 (5th Cir. 1999); Bardwell V. George C. Sharp, Inc., No. 93-3590, 1995 U.S. Dist. LEXIS, at *2 (E.D. La. Aug. 30, 1995).  In considering a Rule 59 motion, courts balance the need to bring litigation to an end and the need to render a just decision based on all facts.  Lavespere, 910 F.2d at 174.  Generally, a Rule 59(e) motion may be granted to correct a manifest error of law or fact, to allow a party to present newly discovered evidence that was previously unavailable, or to prevent manifest injustice. Fidelity & Deposit Co. of Maryland v. Omni Bank, No. 99-1167, 1999 WL 970526, at *3 (E.D. La. Oct. 21, 1999).  "A Rule 59(e) motion cannot be used to relitigate issues with new arguments that could and should have been presented before the judgment was rendered."  Id., citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990) and Tauzier v. Dodge, No. 97-2444, 1998 WL 458184, at *1 (E.D. La. Aug. 4, 1998).

**B. Reconsideration and Clarification**

The Louisiana Supreme Court has held that the dissolution of a contractual provision because it goes against public policy does not necessarily dissolve the entire contract. The court stated, "It is not necessary that the entire agreement containing

the stipulation against public order or policy be declared null." Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353, 1358 (La. 1976).  See also Henderson Implement Co., Inc. V. Langley, 707 So.2d 482 (La.App.3rd Cir.1998)(It is not necessary that the entire agreement containing a provision against public policy be declared null and void; courts are free to recognize, by interpretation of will of the parties, that a provision inserted the in the agreement is only an accessory clause to which the agreement was not subject for its existence, and delete the offending provision while enforcing the remainder of the agreement); Wilson Warehouse Company of Texas Inc., v. Maryland Casualty Co., 269 So.2d 562 (La.App.1st Cir.1972)(In order to avoid inequities, courts will sever the illegal and unenforceable provisions of the contract from the remainder of the contract rather than declare the entire contract void.); Starke Taylor & Sons, Inc., v. Riverside Plantation, 301 So.2d 676, 680 (La.App.3rd Cir.1974)(If the enforceable provision of a contract can be severed from the unenforceable provisions, courts should, in order to avoid inequities, sever the enforceable from the unenforceable portion rather than declare the entire contract void).

 Defendant argues the Court ordered "partial dissolution" of the lease is improper; doing so invalidated the entire lease

agreement. Plaintiff admits that it did not seek dissolution of the lease at this stage (Rec. Doc. No. 46 at 10) and states the issue before the Court was whether, as a matter of law, the parties to a mineral lease can stipulate by contract that a mineral lessee shall have no further obligation to develop or explore the mineral resources underlying the leased premises beyond the limited exploration or development that may have occurred as of the stipulation's effective date. Neither Ascent's motion, nor Simoneaux's cross-motion, addressed the question whether there had, in fact, been reasonable or sufficient development of the two leases in question since the effective date of the stipulations. (Rec. Doc. No. 46 at 10).

The Court notes the prior order and reasons rendered Paragraph 2 of the Compromise Agreement void due to public policy. The Court did not intend, however, to dissolve the entire lease agreement or Compromise Agreement. The Court agrees with Ascent's contention that the issue of whether it breached its obligations to further develop and explore all portions of the leased premises was not before the Court. The Plaintiffs have not contested the Retained Acreage's ability to produce in paying quantities. Moreover, even though, as Plaintiffs point out, La. Civ. Code Art. 2034 provides that "[n]ullity of a provision does not render the whole contract null," it continues, "unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made

without the null provision." In this instance, the Court is unable to make the latter determination and presumably the parties included Paragraph 2 as a means to effectuate the entire Compromise Agreement.

**IT IS ORDERED** that the Defendant's motion to alter or amend is **GRANTED in part** to clarify the prior order invalidating the null provision did not invalidate the entire lease agreement nor the Compromise Agreement.

<u>**II. Motions to Dismiss Counterclaim (Rec. Doc. Nos. 38 & 69)**</u>**:**

**A.   Standard of Review 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) gives the Court the authority to dismiss a claim for failure of the pleadings "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) is disfavored and should not be granted unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  In analyzing a 12(b)(6) motion , the court must liberally construe the complaint in favor of the plaintiff and assume that all facts pleaded in the complaint are true.  <u>See</u> <u>Brown v. Nationsbank Corp.</u>, 188 F.3d 579, 585 (5th Cir. 1999).  Courts may consider the facts presented in exhibits to the complaint, as well as the factual allegations of

9

the complaint itself. U.S., ex rel. Wilkins v. No. Am. Construction Corp., 173 F.Supp.2d 601, 617 (S.D.Tex. 2001). The issue is not whether the plaintiff will ultimately prevail, but "whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." Id. (citing 5 Wright & Miller, Federal Practice and Procedure § 1357, at 601 (1969)); Doe v. Hillsboro Independent School Dist., 81 F.3d 1395, 1401 (5th Cir. 1996). Thus, a court should not dismiss a claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint. Vander Zee v. Reno, 73 F.3d 1365, 1368 (5th Cir. 1996).

Federal Rule of Civil Procedure 12(e), states that if a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). If a 12(e) motion is granted and not obeyed, "the court may strike the pleading to which the motion was directed or make such order as it deems just." Id. The Fifth Circuit recognizes that "there is more than a mere procedural distinction between a motion to dismiss for failure to state a claim and the motion for more definite statement...If the

claim is dismissed because it is too vague or because the plaintiff is unable to supply the details, none of the machinery of discovery whose function it is to ferret out facts and delineate issues before trial can be utilized." Mitchell v. E-Z Way Erectors, Inc., 269 F.2d 126 (5th Cir.1959).

**B.  Unjust Enrichment**

Ascent's first contention is that it is entitled to a remedy based upon the theory of unjust enrichment.  The Louisiana Civil Code states that "a person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law.  The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. C.C. art. 2298. This code article is the codification of Louisiana Supreme Court precedent. "Prior to the enactment of La. C.C. art. 2298, this court held on several occasions that the five requirements for a showing of unjust enrichment ... are: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there

11

must be no other remedy at law available to plaintiff." Carriere v. Bank of Louisiana, 702 So.2d 648 (La.1996); see also Baker v. Maclay Properties Co., 648 So.2d 888 (La.1995) and cases cited therein.

Article 2018 of the Louisiana Civil Code states that "upon dissolution of a contract, the parties shall be restored to the situation that existed before the contract was made." La. C.C. art. 2018. However, in Amoco Production Company v. Texas Meridian Resources Exploration Inc., 180 F.3d 664 (5th Cir. 1999), the Fifth Circuit affirmed the district court's holding that following the dissolution of a mineral lease, the party in breach of the contract was not entitled to recover costs and expenditures associated with performance of other obligations associated with the mineral lease.

Additionally, as noted above, the Louisiana Supreme Court has held that the dissolution of a contractual provision because it goes against public policy does not necessarily dissolve the entire contract. Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1976). The court stated "It is not necessary that the entire agreement containing the stipulation against public order or policy be declared null." Morse, 344 So.2d at 1358. See also Henderson Implement Co., Inc. V. Langley, 707 So.2d 482 (La.App.3rd Cir.1998); Wilson Warehouse Company of Texas Inc., v.

Maryland Casualty Co., 269 So.2d 562 (La.App.1st Cir.1972); Starke Taylor & Sons, Inc., v. Riverside Plantation, 301 So.2d 676, 680 (La.App.3rd Cir.1974).

In the instant case, Ascent filed a counterclaim alleging entitlement to reimbursement for costs expended in association with the mineral leases on the Simoneaux and Rathborne properties, in addition to royalties paid pursuant to the mineral lease. The Defendant's counterclaim for unjust enrichment is based on the erroneous conclusion that the Court nullified the Compromise Agreement (Rec. Doc. No. 61 at ¶8). Based on the clarification above and the reasons stated herein, the Court finds no reason to sustain said counterclaim.

**C.  Other Counterclaims**

The Court finds Ascent has adequately stated a claim against Plaintiffs in counterclaims Possessor in Good Faith and Purchaser in Good Faith. Said claims properly counterclaim similar claims filed against Ascent.

Ascent further counterclaims against Simoneaux for filing the instant action prematurely, before restoring Ascent to its pre-Compromise Agreement position.(Rec. Doc. No. 61 at ¶¶15-16). Similar to the Defendant's unjust enrichment claim, it seems said

claim is based on the conclusion that the Court nullified the entire agreement. On the other hand, the Court is able to infer, as the Plaintiff is able to in order to defend said claim, that "prematurity" refers to the alleged failure to seek judicial demand. The Court finds the Ascent has properly stated a claim upon which relief may be granted.

**IT IS ORDERED** Plaintiff's motion to dismiss is **GRANTED** in part, as to Defendant's counterclaim for unjust enrichment, and **DENIED**, in part.

New Orleans, Louisiana, this 21st day of September, 2006.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE