```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

RATHBORNE LAND COMPANY LLC              *    CIVIL ACTION
AND SIMONEAUX FAMILY LAND, LLC.
                                        *    NO. 05-2452

VERSUS                                  *    SECTION "B"(3)

ASCENT ENERGY, INC.
```

### ORDER

Before the Court are Ascent Energy Inc.'s Motion to Dismiss Against Simoneaux for Failure to State a Cause of Action (Rec. Doc. No. 81), Ascent's Motion to Dismiss or Alternatively for Summary Judgment (Rec. Doc. No. 75), Plaintiffs' Motion to Stay or, Alternatively, to Continue Defendants' Motion to Dismiss or, Alternatively, for Summary Judgement; and Plaintiff's Motion for Expedited Hearing (Rec. Doc. 77).  For the following reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss Against Simoneaux and Defendant's Motion to Dismiss or Alternatively for Summary Judgment are hereby **DENIED**. IT IS FURTHER ORDERED that Plaintiffs' Motion to Stay is hereby **DENIED as moot**.

### Background

Plaintiffs, Rathborne Land Company, LLC ("Rathborne") and Simoneaux Family Land, LLC ("Simoneaux"), filed a Petition seeking declaratory judgment of mineral lease cancellation for failure of the lessee to develop leased property as a reasonably prudent operator under Louisiana Revised Statute 31:122. (Rec.

Doc. No. 1). The petition pertains to the cancellation of three mineral leases, one of which Rathborne holds rights to as lessor ("Rathborne lease") and two of which Simoneaux holds rights to as lessor ("Simoneaux leases"). Ascent Energy Louisiana, LLC ("Ascent") holds rights as the lessee under all three of these leases.

In January 8, 1952, two leases were created and recorded for the same tract of land in favor of The Texas Company as lessee by two different lessors. (Rec. Doc. No. 33 at 3). Parties' predecessors in interest amended both Simoneaux leases on December 30, 1963 pursuant to a Compromise Agreement and Partial Release of all Gas and Mineral Leases ("Compromise Agreement").[1] Ascent Energy, Inc. acquired its interest in the Simoneaux leases, as the mineral lessee, by an act of assignment dated July 26, 2001. On July 26, 2001, Ascent Energy, Inc. acquired the leases by act of assignment. (Rec. Doc. No. 1 at "Ex. A ¶5"). Ascent Energy, LLC is the current lessee under all pertinent lease agreements pursuant to an act of assignment from Ascent Energy, Inc. dated July 24, 2004. (Rec. Doc. No. 33 at 4). The Petition claims Ascent and its predecessors in interest failed and refused to conduct new exploratory or development operations on the leased properties and refused to participate in proposed seismic operations affecting leased properties. (Petition ¶ 10).

---

[1] The Rathborne lease was not affected by the Compromise Agreement addressed in the prior motion for partial summary judgment or the motion for reconsideration.

On November 18, 2002, Rathborne and Simoneaux made formal demand upon Ascent for release of undeveloped and non-producing property. (Petition ¶ 11). Failure to release such property resulted in the instant action for declaratory judgment.

Ascent filed a motion for summary judgment contending that as a matter of law Plaintiff Simoneaux is not entitled to cancellation of the leases because Paragraph 2 the of Compromise Agreement abdicates Defendant of any further duty. Plaintiff filed a cross-motion for partial summary judgment to invalidate Paragraph 2. Paragraph 2 provides:

> Lessors hereby acknowledge that Texaco and Pan American have, with respect to the Retained Acreage, complied with their respective obligations under the leases, and that oil and gas is now being produced from the Retained Acreage <u>in paying quantities</u>; that the <u>Retained Acreage has been, is now and shall hereafter be permanently considered as fully explored and developed</u> as to all sands, strata and horizons; that the wells drilled on the Retained Acreage and on lands unitized therewith constitute reasonable, adequate, and sufficient exploration and development of the Retained Acreage <u>in full compliance with the leases</u>, and that neither Texaco nor Pan American, <u>nor their respective successors or assigns, shall be under any obligation to explore or develop the Retained Acreage further</u>, as to any and all sands, strata whether or not known to exist, so long as production of oil or gas or other minerals attributable to the Retained Acreage should continue to be in paying quantities; provided, that Texaco and Pan American shall have the privilege, at their election, consistent with the provisions of the leases, to conduct further operations on the Retained Acreage, and as to which provisions of the leases shall govern in all respects.

(Rec. Doc. No. 33 at 5) (emphasis added).[2]

---

[2] **Ascent's Answer** (Rec. Doc. No. 2) includes an affirmative defense related to paragraph 2 "the terms and conditions of the Compromise Agreement and Partial Release of Oil and Gas Mineral

On May 8, 2006, the Court considered parties' motions related to said Compromise Agreement and determined Paragraph 2 was invalid pursuant to public policy and dissolved that portion of the lease agreement. (Rec. Doc. No. 37). In the instant motions, Ascent urges the Court to dismiss Plaintiffs' claims under Rule 12(b)(6) or grant summary judgment under Rule 56. Plaintiffs urge the Court to stay or, alternatively, to continue the hearing on defendants' motion to dismiss or, alternatively, for summary judgement.

## Law and Analysis

I.   <u>12(b)(6) Motions to Dismiss (Rec. Doc. No. 81)</u>

A. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure gives the Court the authority to dismiss a claim for failure of the pleading "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) is disfavored and should not be granted unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). In analyzing a 12(b)(6) motion, the court must liberally construe

---

Lease attached as Exhibit 'C' of the Petition as an affirmative defense for any claim for cancellation or failure to comply under La.R.S. 31:122 or any other law or statutes. The St. Charles Land Company mineral lease and Simoneaux mineral lease have been explored and developed pursuant to mutually agreed conditions and terms consistent with La. R.S. 31:3." (Rec. Doc. No. 2 at 4).

the complaint in favor of the plaintiff and assume that all facts pleaded in the complaint are true.  *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 585 (5th Cir. 1999).  The issue is not whether the plaintiff will ultimately prevail, but "whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief."  *Id*. (citing 5 Wright & Miller, Federal Practice and Procedure § 1357, at 601 (1969)); *Doe v. Hillsboro Independent School Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996).  Thus, a court should not dismiss a claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint.  *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

    B. PUGH CLAUSE

Under the general rule, a mineral lease is indivisible, and operations conducted on a parcel of land burdened by a single lease that encompasses multiple parcels is "sufficient to maintain the lease . . . in force as to the entirety of the land burdened."  La. R.S. 31:114.  Parties may, however, contract for a result that is not provided by Article 114.  For example, parties can add a "Pugh Clause" to the lease, which dictates that "if there is unitization" of multiple parcels and production is obtained from a single parcel, "the lease is maintained only as

5

to that portion." Comments, La. R.S. 31:114. But the absence of a Pugh Clause "does not entitle the lessee to hold land lying outside of a unitized area indefinitely" and does not affect a lessee's obligation, under La. R.S. 31:122, to develop and explore the property as a reasonably prudent operator. *Goodrich v. Exxon Corp.*, 642 F. Supp. 150, 152 (W.D. La. 1986).

Defendant correctly asserts that unless a Pugh Clause or some other limiting language is found in the lease, La. R.S. 31:114 provides that unit production maintains the lease as to its entirety. Plaintiffs do not dispute this. However, Defendant's arguments are wholly unrelated to, and do not address Plaintiffs' claim that Defendant failed to maintain the leased property as a reasonably prudent operator as mandated by La. R.S. 31:122. Whether Defendant breached its duty by refusing to conduct new exploratory or development operations on the leased properties, or by refusing to participate in proposed seismic operations affecting leased properties, (Petition ¶ 10), are genuine issues of material fact that must still be decided.

Therefore, by interpreting the facts in a light most favorable to the Plaintiffs, they have stated a claim upon which relief may be granted. Defendant's 12(b)(6) motion to dismiss is **DENIED.**

II. Motion to Dismiss or, Alternatively, for Summary Judgement (Rec. Doc. No. 75)

1. Motion for Summary Judgement

   A.   STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

   B. La. R.S. 31:135 and La. R.S. 31:136

Defendant asserts that Plaintiffs' claims must be dismissed for the following reasons: (1) Plaintiffs letters did not properly

7

notify Defendants of lessor's demand for "performance," but simply demanded a "release" of the leasehold interest, (Rec. Doc. No. 75 at 5-6); (2) Defendant was not allowed a reasonable time for performance, *Id.* at 6-9; (3) Defendant adequately performed its obligations under the lease, *Id.* at 9-11; and (4) Plaintiffs' claim is premature because it was filed before the Conditional Stipulation, defining Ascent's obligations of reasonable development, was declared invalid. *Id.* at 11-13.

The duty to develop and explore is an implied obligation, or passive duty, which generally requires a formal placing in default before judicial intervention may be sought. Comments, La. R.S. 31:135. *See also Pipes v. Payne*, 156 La. 791, 101 So. 144 (1924). Placing an obligor in default by written request only requires a simple letter requesting performance or informing the obligor that performance is expected. *See* Saul Litvinoff, 6 Louisiana Civil Law Treatise: The Law of Obligations, Putting in Default and Damages § 2.3 at 33-34 (1999). Although the letters mailed by Plaintiff on November 18, 2002 did not specifically demand "performance," a reasonable person should interpret their tone as requiring just that. Moreover, the subject lines of both letters conspicuously read: **"Re: Demand for Development."** However, this is ultimately a issue to be determined by the trier of fact.

Furthermore, whether a lessee was allowed a reasonable opportunity to perform after being notified of the breach and

8

whether a lessee adequately performed its obligations under the lease after receiving such notification are issues that must be resolved by the trier of fact on a case-by-case basis. In addition, the issue of whether Plaintiffs' claims are premature hinges on the Court's own interpretation of its prior Order (Rec. Doc. No. 37) invalidating Paragraph 2 of the Compromise Agreement pursuant to public policy. Specifically, the Court must determine whether the invalidation operates retroactively. Therefore, at least four genuine issues of material fact remain disputed which preclude summary judgement at this stage. For the foregoing reasons, Defendant's motions do not meet the standards for relief under Rules 12(b)(6) and 56 and are hereby **DENIED.**

New Orleans, Louisiana, this 26th day of October, 2006.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE