UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RATHBORNE LAND COMPANY LLC** **AND SIMONEAUX FAMILY LAND, LLC.** | * | **CIVIL ACTION** |
| | * | **NO. 05-2452** |
| **VERSUS** | * | **SECTION "B"(3)** |
| **ASCENT ENERGY, INC.** | | |

## ORDER

Before the Court is Plaintiff, Rathborne's Motion for Partial Summary Judgment (Rec. Doc. No. 89). Plaintiff, lessor, seeks to cancel the lease at issue for Defendant, lessee's failure to produce in paying quantities. For the following reasons,

**IT IS ORDERED** that the motion is denied.

## Background

Plaintiffs, Rathborne Land Company, LLC ("Rathborne") and Simoneaux Family Land, LLC ("Simoneaux"), filed a Petition seeking declaratory judgment of mineral lease cancellation for failure of the lessee to develop leased property as a reasonably prudent operator under Louisiana Revised Statute 31:122. (Rec. Doc. No. 1). The petition pertains to the cancellation of three mineral leases, one of which Rathborne holds rights to as lessor ("Rathborne lease") and two of which Simoneaux holds rights to as lessor ("Simoneaux leases"). Ascent Energy Louisiana, LLC ("Ascent") holds rights as the lessee under all three of these leases.

In January 8, 1952, two leases were created and recorded for the same tract of land in favor of The Texas Company as lessee by two different lessors. (Rec. Doc. No. 33 at 3). Parties' predecessors in interest amended both Simoneaux leases on December 30, 1963 pursuant to a Compromise Agreement and Partial Release of all Gas and Mineral Leases ("Compromise

1

Agreement").[1] On July 26, 2001, Ascent Energy, Inc. acquired the leases by act of assignment. (Rec. Doc. No. 1 at "Ex. A ¶5"). Ascent Energy, LLC is the current lessee under all pertinent lease agreements pursuant to an act of assignment from Ascent Energy, Inc. dated July 24, 2004. (Rec. Doc. No. 33 at 4). The Petition claims Ascent and its predecessors in interest failed and refused to conduct new exploratory or development operations on the leased properties and refused to participate in proposed seismic operations affecting leased properties. (Petition ¶ 10). On November 18, 2002, Rathborne and Simoneaux made formal demand upon Ascent for release of undeveloped and non-producing property. (Petition ¶ 11). Failure to release such property resulted in the instant action for declaratory judgment.

Ascent filed a motion for summary judgment contending that as a matter of law Plaintiff Simoneaux is not entitled to cancellation of the leases because Paragraph 2 the of Compromise Agreement abdicates Defendant of any further duty. Plaintiff filed a cross-motion for partial summary judgment to invalidate Paragraph 2. Paragraph 2 provides:

> Lessors hereby acknowledge that Texaco and Pan American have, with respect to the Retained Acreage, complied with their respective obligations under the leases, and that oil and gas is now being produced from the Retained Acreage <u>in paying quantities</u>; that the <u>Retained Acreage has been, is now and shall hereafter be permanently considered as fully explored and developed</u> as to all sands, strata and horizons; that the wells drilled on the Retained Acreage and on lands unitized therewith constitute reasonable, adequate, and sufficient exploration and development of the Retained Acreage <u>in full compliance with the leases,</u> and that neither Texaco nor Pan American, <u>nor their respective successors or assigns, shall be under any obligation to explore or develop the Retained Acreage further</u>, as to any and all sands, strata whether or not known to exist, so long as production of oil or gas or other minerals attributable to the Retained Acreage should continue to be in paying quantities; provided, that Texaco and Pan American shall have the privilege, at their election, consistent with the provisions of the leases, to conduct

---

[1] The Rathborne lease was not affected by the Compromise Agreement addressed in the prior motion for partial summary judgment or the motion for reconsideration.

> further operations on the Retained Acreage, and as to which provisions of the leases shall govern in all respects.

(Rec. Doc. No. 33 at 5) (emphasis added).[2]

On May 8, 2006, the Court considered parties' motions related to said Compromise Agreement and determined that Paragraph 2 was invalid pursuant to public policy and dissolved that portion of the lease agreement. (Rec. Doc. No. 37). Thereafter, Ascent moved for the Court to dismiss Plaintiffs' claims under Rule 12(b)(6) or grant summary judgment under Rule 56. Plaintiffs urged the Court to stay or, alternatively, to continue the hearing on defendants' motion to dismiss or, alternatively, for summary judgement. These motions were denied. Subsequently, Rathborne, as lessor, filed a Motion for Partial Summary Judgment (Rec. Doc. No. 89) seeking to cancel the Rathborne lease due to Defendant, lessee's failure to produce in paying quantities.

## Law and Analysis

I.      Motion for Summary Judgement (Rec. Doc. No. 89)

   A.  STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue

---

[2] **Ascent's Answer** (Rec. Doc. No. 2) includes an affirmative defense related to paragraph 2 "the terms and conditions of the Compromise Agreement and Partial Release of Oil and Gas Mineral Lease attached as Exhibit 'C' of the Petition as an affirmative defense for any claim for cancellation or failure to comply under La.R.S. 31:122 or any other law or statutes. The St. Charles Land Company mineral lease and Simoneaux mineral lease have been explored and developed pursuant to mutually agreed conditions and terms consistent with La. R.S. 31:3." (Rec. Doc. No. 2 at 4).

exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Associates of North Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

      B.    ISSUES OF MATERIAL FACT ARE DISPUTED

Plaintiff, Rathborne, as lessor, seeks cancellation of a mineral lease, dated March 31, 1952, due to Ascent, lessee's failure to produce in paying quantities for a period in excess of thirty-five consecutive months as of July 2006; therefore, Plaintiff claims that the lease expired by its own terms when it failed to produce profits. (Rec. Doc. No. 114 at 2-5). However, numerous issues of contested material fact preclude the imposition of summary judgment at this time.

For example, contrary to Plaintiff's assertions, Defendant's failure to produce in paying quantities does not automatically entitle the lessor to cancel the lease. Specifically, Clause 5 of the Rathborne lease provides that:

> Subject to other provisions herein contained, this lease shall remain in force for a term of five (5) years from the date hereof (called the "primary term"), and thereafter so long as oil, gas or other mineral, or any of them, is being produced from said land in paying quantities **OR** any operations are being conducted hereunder on said land, whether such production or such operations be concurrent or successive. (Rec. Doc. No. 122 at Exhibit 2, p. 2) (emphasis added).

In addition, Clause 5 compliments Clause 2 and provides Defendant, lessee, an additional ninety

days from any cessation of production to maintain its lease rights through further reworking or drilling operations.[3]  Finally, Clause 13 of the lease states that acts of God, such as hurricanes, shall not cause the lessee to lose its rights.[4]

In light of the above provisions, Defendant claims that it maintained its lease rights by conducting further reworking operations following a period of cessation. (Rec. Doc. No. 122 at 4). Specifically, in response to Plaintiff's assertion in its original memorandum in support that production ceased in May 2005, Defendant claims that it would have had through the end of August 2005 (ninety days) to engage in additional reworking operations.  Defendant represents that it initiated plans to install a tubing plugback in August 2005, but these plans were delayed by Hurricanes Katrina and Rita and were not completed until December 2005.  However, Defendant asserts that it cannot be penalized for this delay as per Clause 13.

More recently, in its supplemental memorandum in support, Plaintiff offers evidence that since May 2005 the well at issue has continued to produce at a loss through July 2006. (Rec. Doc. No. 114 at 4).  Therefore, since September 2003, the well has produced at a loss for a total of thirty-five months.  However, as stated previously, this lack of production does not automatically entitle

---

[3]*Id.* at p. 4.  Clause 5 states:
> If after discovery or oil, gas or other minerals the production thereof should cease from any cause, this lease shall not terminate if lessee commences additional drilling . . . or reworking operations within 90 days thereof . . . .

*Id.*

[4]*Id.* at p. 6.  Clause 13 states:
> Whenever, as a result of any cause beyond Lessee's control (such as fire, flood, windstorm or other Act of God . . .), Lessee is prevented from complying with any obligation of this lease, Lessee shall not be liable for damages or forfeiture of this lease and Lessee's obligations shall be suspended so long as such cause persists.

*Id.*

Plaintiff to cancel the lease. Defendant represents that it maintained the lease by conducting reworking operations as soon as was feasible following the cessation of production in May 2005. Moreover, Defendant claims that it continues "to spend money maintaining the lease, has maintained it road right of way through the Rathborne Lease on to adjacent producing mineral leases, has continued to produce and maintain a saltwater disposal well on the Rathborne Lease and subsequently entered into an agreement with Seismic Exchange Inc. concerning seismic operations on the Rathborne Lease in 2006." (Rec. Doc. No. 122 at 5 *citing* Exhibit 6).

In sum, whether Defendant maintained the lease or continues to maintain the lease by conducting reworking operations is a disputed issue of material fact that must be decided at trial. Therefore, viewing the facts in a light most favorable to the Defendant, granting summary is improper at this time.

New Orleans, Louisiana, this 8th day of January, 2007.

                                      UNITED STATES JUDGE
                                      IVAN L.R. LEMELLE